IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

**Appeal No. 24-14034-F**

District Court Case No. 8:23-cr-00012-VMC-NHA-1

---

UNITED STATES OF AMERICA
*Plaintiff/Appellee*,

vs.

ANDRE ADAMS, JR.
*Defendant/Appellant*.

---

Appeal from the United States District Court
for the Middle District of Florida
Tampa Division

---

**INITIAL BRIEF OF APPELLANT**
**[amended corrected brief]**

---

Grady C. Irvin, Jr.
Florida Bar No. 0006548
P.O. Box 21246
Tampa, Florida 33622
Telephone: 813.659-2000
grady@irvinattorneys.com

DATE: July 22, 2025

*United States v. Andre Adams, Jr.*
Appeal No. 24-14034-F

**CERTIFICATE OF INTERESTED PERSONS and CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1, *Fed. R. App. P.*, and 11th Cir. Rule 26.1-1, court-appointed counsel for the Defendant/Appellant certifies that the following persons and/or entities have an interest in the outcome of this case:

Adams, Andre Jr., Defendant/Appellant

Adams, Honorable Natalie Hirt, U.S. Magistrate Judge

Covington, Honorable Virginia M., Senior U.S. District Judge

Gershow, Holly L., Asst. U. S. Attorney (Appellate Counsel)

Hale, Shauna S., Asst. U.S. Attorney (Trial Counsel)

Kehoe, Hon. Gregory W., U.S. Attorney

Irvin, Grady C., Jr., CJA Panel Trial and Appellate Counsel
for Defendant/Appellant

Rhodes, David P. Asst. U. S. Attorney, Chief, Appellate Division

Vitier, Raudel, Assistant Federal Defender

No publicly traded company or corporation has an interest in the outcome of this appeal,

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. Appellant believes that oral argument will assist this Honorable Court.

## CERTIFICATE AS TO TYPE SIZE AND FONT

Appellant states that this brief is written in 14-point Times New Roman, and otherwise complies with the font, pitch, and typeface requisites set forth in Rule 32(a)(5), *Fed. R. App. P*.

## CERTIFCIATE OF COMPLIANCE AS TO LENGTH OF BRIEF

Appellant certifies that this brief complies with the page limitation and/or word limitation set forth in Rule 37(a)(7)(A) and/or Rule 37(a)(7)(B), *Fed. R. App. P*. The principal brief contains 6,944 words/characters.

**TABLE OF CONTENTS** **PAGE NO.**

CERTIFICATE OF INTERESTED PERSONS……………………......... …C-1

STATEMENT REGARDING ORAL ARGUMENT………..……………..i

CERTIFICATE AS TO TYPE-SIZE AND FONT……………………….…i

CERTIFICATE OF COMPLIANCE AS TO LENGTH OF BRIEF…….......i

TABLE OF CONTENTS……………………………………………………ii

TABLE OF CITATIONS AND ADDITIONIAL AUTHORITIES………...iv

STATEMENT OF JURISDICTION……………..………………………...vii

I. STATEMENT OF THE ISSUES……………………………………1

II. STATEMENT OF THE CASE……………………………………....2

A. NATURE OF THE CASE …………………………………2

B. COURSE OF THE TRIAL COURT PROCEEDINGS AND DISPOSITION IN THE COURT BELOW………..………2

C. STATEMENT OF THE FACTS…..........................................4

D. STATEMENT OF THE STANDARDS OF REVIEW………15

III. SUMMARY OF THE ARGUMENT………………………………..17

IV. ARGUMENT AND CITATIONS OF AUTHORITY ...……………..17

A. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S PRETRIAL MOTION TO SUPPRESS AND PETITION FOR A *FRANKS* HEARING?..............17

B. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S PRETRIAL MOTIONS IN LIMINE?.............23

C. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S HEARSAY OBJECTION REGARDING KEYS TO A THE STORAGE UNIT?....................25

D. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL?.....26

E. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S REQUEST FOR AN INSTRUCTION ON "MERE PRESENCE"?........................................27

F. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT TO A TERM OF 228 MONTHS IMPRISONMENT?...29

V. CONCLUSION………………………………………………………...29

VI. CERTIFICATE OF SERVICE……………………………………...30

## TABLE OF CITATIONS

**CASES CITED** **PAGE NO.**

*Aycock v. R. J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014)……………………………………………………………24

*Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005)…24, 25

*Franks v. Deleware*, 438 U.S. 154 (1978)……..1, 4, 9, 17, 20, 22, 23

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 596, 169 L.Ed.2d 445 (2007)…………………………………………………………………....16

*Illinois v. Gates*, 462 U.S. 2131 (1996)…………………...……………..23

*Luce v. United States v. Barton*, 469 U.S. 38, 40 (1984)……………….…23

*Stano v. Butterworth*, 51 F.3d 942 (11th Cir. 1995)………………………..15

*United States v. Agbai*, 497 F.3d 1226 (11th Cir. 2007)……………….……..29

*United States v. Arbolaez*, 450 F.3d 1283 (11th Cir. 2006)…..……………20

*United States v. Barton*, 909 F.3d 1323 (11th Cir. 2018)….15, 19, 20, 24, 26

*United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005)………15, 16, 24, 26

*United States v. Cross*, 928 F.2d 1030, 1051 (11th Cir. 1991)…………….24

*United States v. Dixon*, 901 F.3d 1322 (11th Cir. 2018)……………….16, 28

*United States v. Fernetus*, 838 F.App'x 426, 432 (11th Cir. 2020)………..23

*United States v. Green*, 40 F.3d 1167 (11th Cir. 1994)………………….....19

*United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012) ………………………………………………………………17, 18, 24, 26

*United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013) ……………………………………………………….15, 16, 17, 24, 27, 28

*United States v. Lebowitz*, 676 F.3d 1000 (11th Cir. 2012)……………20, 22

*United States v. Lopez*, 649 F.3d 1222 (11th Cir. 2011)…………………...18

*United States v. McGregor*, 960 F.3d 1319 (11th Cir. 2020)…………..…..24

*United States v. Morales*, 987 F.3d 966 (11th Cir. 2021)…………………23

*United States v. Morris*, 20 F.3d 1111 (11th Cir. 1994)……………..........29

*United States v. Perez*, 943 F.3d 1329 (11th Cir. 2019)…………………...16

*United States v. Scrushy*, 721 F.3d 1288 (11th Cir. 2013)……………..16, 27

*United States v. Shelley*, 405 F.3d 1195 (11th Cir. 2005)……………...24, 25

*United States v. Sirany*, 70 F.3d 388 (11th Cir. 1995)…………………16, 28

*United States v. To*, 144 F.3d 737 (11th Cir. 1998)…………………..…….27

*United States v. Tokars*, 95 F.3d 1520 (11th Cir. 2000)…………..………15, 19

*United States v. Valencia-Trujillo*, 573 F.3d 1171 (11th Cir. 2009)………20

*United States v. Whyte*, 987 F.3d 966 (11th Cir. 2021)………….…………23

**STATUTES CITED**

18 U.S.C. § 3231……………………………………………………………vii

18 U.S.C. § 3553(a)………………………………………………………...29

28 U.S.C. § 1291 …...………………………………………..…………vii

18 U.S.C. § 3742(a) ………………………………………..…………vii

**RULES CITED**

Fed. R. App. P. 4(b)…..………………………………… …………vii

Fed. R. App. P. 26.1…..…………………………………………………C1-1

Fed. R. App. P. 32(a)(5)…………………………………………… …….i

Fed. R. App. P. 37(a)(7)(A)……………………………………… …….i

Fed. R. App. P. 37(a)(7)(B)……………………………………… …….i

U.S. Const amend. IV……………..………………………….………18, 20

U.S. Const amend. XIV…………..………………………….………18, 20

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), the U.S. Court of Appeals for the Eleventh Circuit has jurisdiction over this cause, which is the appeal of (a) a final judgment of conviction entered in a criminal case, and (b) the imposition of a sentence. The sentence was imposed by the district court judge pursuant to 18 U.S.C. § 3231. A timely notice of appeal was filed. *See* Rule 4(b), Fed. R. App. P.

# I. STATEMENT OF THE ISSUE(S)

A. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S PRETRIAL MOTION TO SUPPRESS AND FOR A *FRANKS* HEARING.........................?

B. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S PRETRIAL MOTIONS IN LIMINE…………………?

C. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S HEARSAY OBJECTION TO TESTIMONY CONCERNING KEYS TO A STORAGE UNIT...................................?

D. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL.........................?

E. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S REQUEST FOR A JURY INSTRUCTION ON "MERE PRESENCE"………………………………………..?

F. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT TO A TERM OF 228 MONTHS IMPRISONMENT...........?

## II. STATEMENT OF THE CASE

### A. NATURE OF THE CASE

The instant appeal to the Eleventh Circuit is with respect to the post-trial entry of a final judgment and sentence imposed against Andre Adams, Jr. (hereinafter referred to as "the Defendant", "Mr. Adams", and/or "Appellant"). Mr. Adams is currently committed to the United States Bureau of Prisons and serving the imposed sentence of 228 months.

### B. COURSE OF PROCEEDINGS

On January 10, 2023, the Grand Jury (sitting for the Tampa Division of the U.S. District Court for the Middle District of Florida) returned a three-count federal indictment against Mr. Adams. The indictment charged Mr. Adams with (1) possession and distribution of the controlled substances methamphetamine and fentanyl (Count One), (2) possession of a firearm in furtherance of the controlled substances distribution charge (Count Two), and (3) possession of a firearm and ammunition by a convicted felon (Count Three).[1]

Having entertained pretrial litigation that included, *inter alia*, a motion to suppress,[2] various *motions in limine*,[3] and a motion for severance of the felon in

---

[1] Appendix, Tab B; *see also* Doc. 1.

[2] *See generally* Appendix, Tabs 20, 25, 49, 53, and 61.

[3] *See generally* Appendix, Tabs 117, 119, and 126.

possession of a firearm and ammunition charge,[4] the district court proceed with a jury trial on July 15, 2024—a multi-day matter that ended on July 17, 2024.[5] However, prior to giving jurors their final instructions and along with the case to deliberate, the district court heard oral arguments with respect to the defense's request for a jury instruction on "mere presence."[6] The judge denied the defense's motion for the requested "mere presence" instruction.[7] The jury received the case, completed their deliberations, and returned unanimous verdicts of guilty with respect to each count of the indictment.[8]

On November 11, 2024, the district court announced that Mr. Adams was to be imprisoned for a term of 228 months (19 years).[9] More specifically, the term of imprisonment consists of 168 months as to Count One, a concurrent term 168 months as to Count Three, and an additional term of 60 months imprisonment as to Count Two, with the additional term to run consecutive to the two concurrent terms of 168 months.[10]

---

[4] *See generally* Appendix, Tabs 111, 120, and 124.

[5] *See generally* Doc. 162, Doc. 163, and Doc. 164.

[6] *See generally* Appendix, Tabs 128; *see also* Doc. 164 at 90-93.

[7] Doc. 164 at 90-93.

[8] Doc. 164 at 138-41.

[9] *See* Doc. 165 at 25-6.

[10] Appendix, Tab D (*Judgment*).

On December 9, 2024, Mr. Adams timely filed a notice of appeal as to the underlying final judgment of conviction, the sentence imposed, and certain adverse rulings made in relation to pretrial matters and/or trial matters.

## C. STATEMENT OF THE FACTS

On January 10, 2023, the Grand Jury returned a three-count indictment that charged Mr. Adams with (1) the drug trafficking offense of possession with intent to distribute controlled substances methamphetamine and fentanyl, (2) possession of a firearm in furtherance of the charged drug trafficking offense, and (3) possession of a firearm and ammunition by a convicted felon.[11] The underlying case eventually proceeded to a three-day trial by jury.[12] However, prior to reaching the trial dates the court held an evidentiary hearing to address pretrial litigation surrounding a defense motion to suppress and contemporaneous request for a *Franks* hearing.[13]

### The Underlying Investigation – Backdrop to the Motion to Suppress, and the Request for a *Franks* Hearing

[11] Appendix, Tab B; *see also* Doc. 1.

[12] *See generally* Doc. 162, Doc. 163, and Doc. 164.

[13] *See generally* Appendix, Tabs 20, 25, 48, 49, 53, and 61.

On July 28, 2022, Detective Gregory Dunlap ("Detective Dunlap") of the Manatee County Sheriff's Office ("MCSO") executed a sworn *Affidavit and Application for Search Warrant* ("Affidavit") requesting that a state court judge issue a search warrant for the targeted premises of 303 22nd Street East, Bradenton, Florida.[14] In the affidavit, Detective Dunlap noted his twenty-three years of employment with the MCSO, as well as his extensive credentials in law enforcement.[15] According to Detective Dunlap, "while working for the Manatee County Sheriff's Office as a detective" he was contacted by a concerned citizen(s) that wanted to provide information on a fentanyl dealer who went by the street name of "Dre." The affidavit does not indicate a date in which contact with the concerned citizen(s) took place nor the veracity of the purported "concerned citizen(s)." According to Detective Dunlap the concerned citizen(s) stated "Dre" routinely used CashApp to receive payment in exchange for narcotics.[16] In the affidavit, Detective Dunlap informed that he was able to positively identify Andre Adams, Jr. as being "Dre" (although the detective does not specify precisely how

---

[14] *See* Appendix, Tab 20 at Exhibit B at DISC-00055-00064. As will be discussed momentarily Detective Dunlap would execute a related second *Affidavit and Application for Search Warrant* requesting that a state court judge issue a search warrant for a storage located inside a Bradenton, Florida storage facility.

[15] *Id*.

[16] Appendix, Tab 20 at Exhibit B at DISC-00055-00064.

he made such an identification nor precisely when he made the identification).[17] Detective Dunlap asserts that initially all he knew—in terms of an address—was that Dre lived on 22nd Street East.[18] By way of a discovery subpoena issued by his own agency, Detective Dunlap obtained CashApp account records from Block, Inc. (formerly Square Inc.) purportedly for an account that he (Detective Dunlap) linked to Mr. Adams. There was never a full explanation as to how Detective Dunlap concluded the CashApp account was owned by Mr. Adams. CashApp records were for the three-month period of January 4, 2022 through March 3, 2022.[19] According to Detective Dunlap, during this three-month period of documented activity there was in excess of $67,000 deposited into the CashApp account.[20] Detective Dunlap asserts in the affidavit that he tracked down one person who claimed to have sent money to the CashApp account during the period in question—the person stated that the money deposited was for a family member's debt (but failed to provide law enforcement information with respect to

[17] *Id*. The only elaboration on the start of the investigation was at trial when Detective Dunlap testified during the subsequent trial in this cause—stating the initial part of the investigation started around the beginning of December 2021. *See* Doc. 163 at 89.

[18] *See* Appendix, Tab 20 at Exhibit B at DISC-00056.

[19] *Id*.

[20] *Id*.

the basis for the debt).[21] Detective Dunlap opines in the affidavit/application that the information provided by CashApp does not appear to reveal a legitimate source of income for Mr. Adams (*i.e.*, government assistance or employer).[22] Stationary surveillance of the 303 22nd Street East residence was conducted on approximately eight different dates during the months of June and July 2022.[23] Detective Dunlap observed foot, bicycle, and vehicle traffic that would come-and-go from the residence.[24] The affidavit provided by Detective Dunlap attests that on June 13, 2022 he (Detective Dunlap) conducted a trash pull at the 303 22nd Street East residence and located "three bags which contained a white powdery residue."[25] The discovery material does not include information about a June 13 trash pull—but does refer to a trash pull occurring on June 9, 2022.[26] On July 28, 2022,

---

[21] *Id*.

[22] *Id*.

[23] *Id*. at Exhibit B at DISC-00056-00061.

[24] *Id*. As argued by the defense in the suppression filing, law enforcement did not make perform any traffic stops or *Terry* stops during the nearly eight months long investigation. *Id*. at 5.

[25] *Id*. at Exhibit B at DISC-00059. "One of the three bags tested positive for fentanyl during a field presumptive test." *Id*. at 15 (Detective Dunlap located a pill bottle with the name "Shirley Whitfield" with the bag containing fentanyl residue. As discussed herein, in his affidavit/application Detective Dunlap failed to disclose the name of Shirly Whitfield to the state court judge who would eventually sign-off on the underlying search warrants in this case.).

[26] *Id*.

Detective Dunlap's affidavit/application for a search of the 303 22nd Street residence was approved by a state court judge.[27] On August 4, 2022, law enforcement executed the search warrant on the 303 22nd Street East residence. As disclosed in a second affidavit/application for a search warrant—which was prepared based upon the raid that had just occurred at the 303 22nd Street East residence—law enforcement seized from within the residence trafficking amounts of various controlled substances as well as a firearm and ammunition.[28] Mr. Adams was the sole occupant of the residence at the time the search warrant was executed—he was taken into custody.[29] While the search warrant at the 303 22nd Street East residence was purportedly being executed, a discovery subpoena was purportedly being served on the management of Pinnacle Self-Storage which purportedly resulted in the management showing law enforcement a log suggesting that Mr. Adams had visited the self-storage facility numerous times.[30] Referencing the controlled substances and firearm which had just been seized at the 303 – 22nd

[27] *Id*. at Exhibit B at DISC-00063-64.

[28] *Id*. at Exhibit C at DISC-00066-72.

[29] Doc. 163 at 145.

[30] In its subsequently submitted suppression filing, defense counsel informed the district court that during the course of discovery the United States did not produce this purported subpoena that was purportedly issued to Pinnacle Self-Storage. *See* Doc. 20 at 8. While Detective Dunlap asserts that management of Pinnacle confirmed that Mr. Adams was the sole renter of storage unit C403, and that he visited the unit frequently from July 1, 2022 through August 2, 2022, there is no information as to how that record was maintained or established." *Id*.

Street East residence—Detective Dunlap submitted an affidavit/application ("application") to enter and search storage unit C403, located at Pinnacle Self-Storage, 2330 Manatee Avenue East, Bradenton, Manatee County, Florida.[31] In contesting the underlying searches and seizures, Mr. Adams filed a motion to suppress along with a request for a *Franks* hearing.[32] The motion to suppress asserted that in law enforcement's efforts to establish probable cause, Detective Dunlap used "conclusory misleading language" knowing that he did not have proof of drug transactions to establish probable cause.[33] The motion set forth that Detective Dunlap referred to the 303 22nd Street East location as being the primary residence of Mr. Adams (when in fact it was not), and that Mr. Adams "was using CashAp to allow customers to pay for narcotics" knowing he (Detective Dunlap) did not have proof of any such transactions related to narcotics to establish probable cause.[34] And lastly, Detective Dunlap asserted in his affidavit/application for a search warrant on storage unit C403 that law enforcement had served a discovery subpoena on the management of Pinnacle Self-Storage—and obtained information from management that that Mr. Adams was the renter of the storage

---

[31] *Id.*; *see also id.* at Exhibit C, *generally*.

[32] *See generally* Appendix, Tab 20.

[33] *Id.* at 7-8.

[34] *Id.*

unit to be searched.[35] When in reality, a subpoena to management at Pinnacle Self-Storage was not provided in discovery.[36] Up until the date of the execution of the two search warrants (which occurred nearly eight months after the investigation of Mr. Adams began), the only tangible controlled substance-type evidence law enforcement had acquired in this case came from a trash pull when Detective Dunlap obtained a baggie with powder residue that field tested positive for fentanyl—baggies that were contained with a pill bottle bearing the name "Shirley Whitfield."[37]

**Trial (Commencing/Ending)**

The trial commenced with jury selection on July 15, 2024. Leading up to the trial date, the defense presented the district court with a written motion for severance as well as a number of written *motions in limine* for consideration. The presiding district court judge announced at the start of the trial that all of defendant's motions were being denied; however, the judge informed that counsel would be allowed to bring the motions up during the course of the trial (when jurors were recessed).[38] The court addressed the defense's motions after the jury

---

[35] *Id*. at 8.

[36] *Id*.

[37] *Id*. at 15-16.

[38] *See* Doc. 162 at 6-7.

adjourned following the first day of testimony. In the motion to sever, the defense requested that the trial court sever from the drug trafficking trial the Government's joinder of the 21 U.S.C. § 922(g) felon in possession of a firearm/ammunition charge (Count Three).[39] The defense relied upon the position spelled-out in its filing.[40] The court ruled that "judicial economy weighs in favor of denying the severance."[41] As for the *motions in limine*,[42] Mr. Adams having not been charged with a conspiracy and the customary associated expression of an expanded timeframe of criminal conduct spelled-out on the face of the indictment (*e.g.*, "from on about an unknown date through the date of the indictment"), but instead specifically charged in the instant case with only substantive counts occurring on a singular specific date (August 4, 2022), petitioned the court in his *motions in limine* to limit the Government from talking about any conduct that did not occur on August 4, 2022.[43] The defense expressed its concerns about the unfair prejudice that would result.[44] The court denied the requested relief.[45]

---

[39] *Id*. at 66-70; *see also* Appendix, Tab 111.

[40] *See* Doc. 162 at 66-67; *see also* Appendix, Tab 111.

[41] *See* Doc. 162 at 70.

[42] *See generally* Appendix, Tab 117.

[43] *See* Doc. 162 at 72-77; *see also* Appendix, Tab 117.

[44] Doc. 162 at 72-77.

[45] *Id*.

Trial testimony started with Sgt. Jason Powell ("Sgt. Powell"), a supervisor with the intelligence unit and special investigations division of the MCSO. Sgt. Powell testified that on August 4, 2022, he was the on-scene supervisor for a search warrant that executed at 303 22nd Street East in Bradenton, Florida.[46] The search warrant was executed at approximately 7:24 in the morning.[47] According to Sgt. Powell, Mr. Adams was removed from within the residence and placed into handcuffs.[48]

MCSO Deputy Rafael Ortegon ("Deputy Ortegon") testified that he was part of the search warrant team at the 303 22nd Street East residence. Deputy Ortegon informed jurors that a firearm was found atop a kitchen counter,[49] and located in the dresser drawer of a bedroom, law enforcement found a red bag with a plastic Tupperware container housing various amounts of suspected narcotics.[50] Also located at the 22nd Street East residence was an envelope addressed to Mr. Adams with a mailing address that was *not* that of 303 22nd Street East.[51]

---

[46] *Id*. at 28.

[47] *Id*. at 29.

[48] *Id*. at 29-30.

[49] *Id*. at 55.

[50] *Id*. at 52-3.

[51] Doc. 163 at 7.

With respect to storage unit C403, Sgt. Powell provided trial testimony that during the investigation the case detective (Detective Dunlap) had identified a storage unit that he (Detective Dunlap) believed Mr. Adams had been frequenting and believed Mr. Adams *might* be keeping a cache of narcotics and other contraband.[52] Sgt. Powell informed the jury that on that same date, upon law enforcement finding out that the storage unit was leased to Mr. Adams, Detective Dunlap secured a search warrant for storage unit C403, which was located at Pinnacle Self Storage, 2330 Manatee Avenue East, in Bradenton, Florida.[53] Despite the contemporaneous hearsay objections to the line of questioning leading to the testimony being given by Sgt. Powell, he was allowed to inform the jury that law enforcement got into the storage unit because Detective Dunlap brought a set of keys with him that he (Sgt. Powell) was led to believe was recovered from the search of the residence.[54] The keys were utilized to unlock the lock to the storage unit,[55] and thereupon a search of the storage unit took place. Sgt. Powell told jurors that the contents of storage unit C403 included, *inter alia*, two kilograms of suspected cocaine, a scale, a large quantity of suspected methamphetamine, a

---

[52] Doc. 162 at 31.

[53] *Id*.

[54] *Id*. at 33.

[55] *Id*.

bucket filled with ammunition a semiautomatic firearm, an AK-47-type firearm, and a Tupperware container with various types of suspected narcotics and pills.[56] The government rested its case. The defense did not put on a case and moved for a judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P. The defense's motion was denied. The case was eventually submitted to the jury. A verdict of guilty was returned as to each of the three charged counts in the indictment.

**Presentence Investigation Report / Sentencing**

On September 10, 2024, the U.S. Probation Office prepared a final presentence investigation report in the underlying case of Mr. Adams.[57] A sentencing memorandum was submitted on behalf of Mr. Adams.[58] Noting, *inter alia*, that Probation calculated that Mr. Adams was a Criminal History category II, an advisory guideline range of 135 months to 168 months, and a statutorily required term of 60 months imprisonment consecutive to any other term of imprisonment. The defense wrote that a combined sentence of no greater than 168 months (14 years) was arguably sufficient and not greater than necessary to comply with 18 U.S.C. § 3553(a).[59] However, on November 25, 2024, the trial

---

[56] *Id*. at 35-39.

[57] Doc. 143.

[58] *See generally* Appendix, Tab C.

[59] *Id*.

court sentenced Mr. Adams to a term of 228 months imprisonment, consisting of two concurrent 168 months terms of imprisonment followed by a consecutive 60-month term.[60]

## D. STATEMENT OF THE STANDARD(S) OF REVIEW

A. Findings of fact with respect to a motion to suppress are reviewed for clear error; the district court's application of the law to those facts is subject to *de novo* review. *See United States v. Tokars*, 95 F.3d 1520 (11th Cir. 2000). In reviewing the findings of fact by the lower court, the clearly erroneous standard applies not only to the findings of fact relating to the issues of credibility. *See Stano v. Butterworth*, 51 F.3d 942 (11th Cir. 1995).

B. The appellate court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Barton*, 909 F.3d 1323 (11th Cir. 2018); *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013); *United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012); *United States v. Brown*, 415 F.3d 1257, 1265 (11th Cir. 2005).

C. With regards to a hearsay objection, the appellate court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Barton*, 909 F.3d 1323 (11th Cir. 2018); *United States v. Joseph*, 709 F.3d 1082 (11th Cir.

---

[60] Appendix, Tab D.

2013); *United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012); *United States v. Brown*, 415 F.3d 1257, 1265 (11th Cir. 2005).

D. A lower court's denial of a motion for judgment of acquittal is reviewed for abuse of discretion. A district court abuses its discretion when it misapplies the law in reaching its decision or bases its decision on findings of fact that are clearly erroneous. *United States v. Scrushy*, 721 F.3d 1288 (11th Cir. 2013).

E. A lower court's denial of a requested jury instruction is reviewed for abuse of discretion. *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013); *United States v. Sirang*, 70 F.3d 588 (11th Cir. 1995). However, the *de novo* standard applies if the issue is whether there was sufficient evidence to support the instruction. *United States v. Dixon*, 901 F.3d 1322, 1346-47 (11th Cir. 2018). A district court abuses its discretion when it misapplies the law in reaching its decision or bases its decision on findings of fact that are clearly erroneous. *United States v. Scrushy*, 721 F.3d 1288 (11th Cir. 2013).

F. The appellate court reviews *de novo* the district court's interpretation of the Guidelines and its application of the Guidelines to the facts. Findings of fact by the trial court are reviewed for clear error. *United States v. Perez*, 943 F.3d 1329, 1332-33 (11th Cir. 2019). The appellate court reviews the final sentence imposed under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38,

128 S. Ct. 596, 169 L.Ed.2d 445 (2007); *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013).

## III. SUMMARY OF THE ARGUMENT

A. The district court's pretrial ruling denying the defense motion to suppress evidence was an abuse of discretion, and its findings were clearly erroneous in denying a *Franks* hearing.

B. The district court's ruling denying the defense's *motions in limine* was an abuse of discretion.

C. The district court's evidentiary ruling denying the defense's hearsay objection was and abuse of discretion.

D. The district court abused its discretion in denying the defense motion for a judgement of acquittal.

E. The district abused its discretion in not giving the defense's request for a jury instruction on "mere presence."

F. The district court abused its discretion in imposing a sentence of 229 months imprisonment.

## IV. ARGUMENT AND CITATIONS OF AUTHORITY

### **A.** WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S PRETRIAL MOTION TO SUPPRESS AND PETITION FOR A *FRANKS* HEARING?

At all times relevant to the underlying case, Mr. Adams had a constitutional right to be free from an unreasonable search and seizure. *See U.S. Const. amend. IV*. Furthermore, Mr. Adams also had a constitutional right to liberty, equal protection of the laws, and the right not to be deprived of said rights without due process of law. *See U.S. Const. amend. XIV*. In the instant case the searches and seizures at issue were made pursuant to two underlying search warrants; nevertheless, the substantial rights of Mr. Adams were violated when law enforcement improperly secured warrants to search a residence said to be that of Mr. Adams's, as well as a storage unit also said to be that of Mr. Adams's. As set forth earlier in this filing, Mr. Adams presented the district court with a motion to suppress the physical evidence seized and a contemporaneous request for a *Franks* hearing—contending that the warrants in this case were secured by law enforcement with known material misrepresentations, material misrepresentations, and intentional material omissions.[61] In order to obtain a search warrant and satisfy the probable cause standard, the government must reveal facts that make it likely that the items being sought are in that place when the warrant issues. *United States v. Lopez*, 649 F.3d 1222, 1246 (11th Cir. 2011). At the time of issuing the warrant to search what Detective Dunlap intentionally misrepresented to the state

[61] *See generally* Appendix, Tab 20.

court judge as being the primary residence of Mr. Adams, the underlying eight-month investigation had yielded the acquisition of "zero" controlled substances from within the residence, any occupant or visitor of the residence, or from Mr. Adams. The same is said with respect to the C403 storage unit. Information in the application for the search warrant must be timely for probable cause to exist since probable cause must exist at the time the magistrate judge issues the search warrant. *United States v. Green*, 40 F.3d 1167 (11th Cir. 1994). Such is not the case here. During the nearly eight-month investigation, none of the drug addicts that Detective Dunlap were reported as being seen at the residence, with Mr. Adams, or meeting up with Mr. Adams. At the time, the closest that law enforcement had come in acquiring any form of drug evidence from at or near the residence was during a trash pull in which Detective Dunlap obtained three small baggies with a powdery residue. The baggies were within a pill bottle with the name "Shirley Whitfield" affixed.

Evidentiary rulings are reviewed for abuse of discretion. *United States v. Barton*, 909 F.3d 1323 (11th Cir. 2018). The trial court has broad discretion in determining the admissibility of evidence. Even where an abuse of discretion is shown, non-constitutional evidentiary errors are not grounds for reversal absent a reasonable likelihood that the defendant's substantial rights were affected. *United States v. Tokars*, 95 F.3d 1520 (11th Cir. 2000); *United States v. Barton*, 909 F.3d

1323 (11th Cir. 2018). In the instant case constitutional harm is at issue because of the Fourth and Fourteenth Amendment rights of Mr. Adams. In *Franks v. Delaware*, 438 U.S. 154, 165 (1978), the Supreme Court considered the issue of whether a defendant in a criminal proceeding has the right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual statements made in the affidavit supporting a warrant. While search warrants and their affidavits are entitled to a presumption of validity, *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012), under *Franks*, a defendant may challenge the veracity of an affidavit in support of a search warrant if he makes a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (citing *Franks*, 438 U.S. at 155-56); *United States v. Valencia-Trujillo*, 573 F.3d 1171, 1182 (11th Cir. 2009) (quoting *Franks*, 438 U.S. at 155-56). A defendant who satisfies both prongs is entitled to an evidentiary hearing on the issue. *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006). Here the actions of a 23-year law enforcement veteran and narcotics detective cannot be seen as an "oops!". Detective Dunlap knew of the identity of Shirley Whitfield, yet he not only intentionally elected to withhold her identity from the state court judge signing-off

on the search warrants—but to also withhold the fact that the field-tested fentanyl residue acquired from a baggie in a trash pull came from a pill bottle with Ms. Whitfield's name on it and that up until the application for that warrant for the residence the only yield from an eight-month long investigation was that baggie and two others—all coming from the pill bottle with Ms. Whitfield's name. The actions of Detective Dunlap were intentional and designed to not fully-disclose matters to the state court judge because it brought about a suspect who was not Mr. Adams. See *United States v. Whyte*, 928 F.3d 1317, 1333-1334 (11th Cir. 2019). Here, a review of what "search warrant application affiant" Detective Dunlap presented to the state court judge authorizing the two underlying search warrants establishes undisputed pertinent and intentional facts such as: (a) the affiant intentionally presented the judge with serious and prejudicial allegations about Mr. Adams while intentionally keeping from the court the known or unknown veracity of such person(s), (b) the affiant intentionally attributing the 303 22nd Street residence as being that "primary residence" of Mr. Adams's to the exclusion of informing the judge about the identity of others who were either residing at the residence, frequent the residence, had utilities to the residence there in their name, or who the affiant had identifying information about as a consequence of a trash pull (*e.g.*, Shirley Whitfield), (c) the affiant intentionally misleading the judge by, *inter alia*, not providing the judge with full information regarding the CashApp

account and instead intentionally misleading the judge with a conclusory statement that the account *belonged* to Mr. Adams, (d) the affiant intentionally misleading the judge by not telling the judge that the baggie which field-tested positive for fentanyl residue was the sole piece of controlled substance evidence acquired in the eight months long investigation of Mr. Adams and that such evidence was in a pill bottle with a person's name other than Mr. Adams,[62] and (e) the affiant intentionally failing or otherwise materially misleading the judge by not informing him the court that there was no nexus between the tip from the concerned citizen(s) and CashApp transactions to either the residence nor the storage unit. An affidavit with known misrepresentations can be stricken and all fruits of the search can be suppressed. *See Franks v. Delaware*, 438 U.S. 154, 165 (1978). Providing the state court judge with the "inclusion of the omitted facts would have prevented a finding of probable cause." *See United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012). With regards to the search warrant for the storage unit C403, that warrant was based upon the findings of the unlawful search of the residence. The fruits of the unlawful search of the residence (*e.g*., the drug evidence) cannot be "cleansed" to validate the search warrant for storage unit C403 storage unit.

[62] Of course, there was substantial drug evidence seized at the 303 22nd Street East residence during execution of the search warrant—and that evidence was set forth in the affidavit /application for a search warrant for storage unit C403.

Therefore, the search of storage unit C403 was unlawful, and the evidence seized should be suppressed. The evidence should be excluded, and the Government cannot establish that there is a good faith exception to excluding the evidence. *See United States v. Morales*, 987 F.3d 966 (11th Cir. 2021). The district courts bear the responsibility of ensuring that the judge who issued the warrant, had a substantial basis for concluding the affidavit supporting the search warrant has established probable cause. *Illinois v. Gates*, 462 U.S. 213, 214 (1983). Here, it is the position of Mr. Adams that by the court denying a *Franks* hearing and summarily concluding that conclusory representations of Detective Dunlap were absent of material misrepresentations, misrepresentations, and omissions, the court did not.

B. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S PRETRIAL MOTIONS IN LIMINE?

The term *motion in limine* generally refers to a motion to "exclude anticipated prejudicial evidence before the evidence is actually offered. *United States v. Fernetus*, 838 F. App'x 426, 432 (11th Cir. 2020) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). The decision to exclude anticipated prejudicial evidence before the evidence is actually offered at trial is the province of the trial judge who has wide discretion in weighing any materiality or relevance against any prejudice, and unless the judge's reading is "off the scale," his discretion is not

abused. *United States v. Shelley*, 405 F.3d 1195, 1201 (11th Cir. 2005); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005). A district court is correct in that it is the province of the trial judge to weigh any materiality or relevance against any prejudice. *United States v. Shelley*, 405 F.3d 1195, 1201 (11th Cir. 2005). As the district court noted in *United States v. McGregor*, 960 F.3d 1319, 1324 (11th Cir. 2020), "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following" unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id*. (quoting *United States v. Cross*, 928 F.2d 1030, 1051 (11th Cir. 1991). As the district court rightly concluded, "[m]oreover, '[i]n applying Rule 403, courts must look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" *United States v. McGregor*, 960 F.3d 1319, 1324 (11th Cir. 2020) (quoting *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) (internal quotes omitted). Of course, the appellate court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Barton*, 909 F.3d 1323 (11th Cir. 2018); *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013); *United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012); *United States v. Brown*, 415 F.3d 1257, 1265 (11th Cir. 2005). The decision to exclude anticipated prejudicial evidence before the evidence is actually

offered at trial is the province of the trial judge who has wide discretion in weighing any materiality or relevance against any prejudice, and unless the judge's reading is "off the scale," his discretion is not abused. *United States v. Shelley*, 405 F.3d 1195, 1201 (11th Cir. 2005); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005). By its *motions in limine*, the defense in the instant case sought to exclude what it considered unfairly prejudicial evidence that occurred outside of the specified August 4, 2022 date that was expressly set forth on the face of the underlying indictment. The government—clearly aware that absent the drug raid seizures they had no underlying drug transaction evidence against Mr. Adams, but instead had only a host of "I believes" by Det. Dunlap—admitted that its case against Mr. Adams was "circumstantial" wanted and highly prejudicial CashApp records from January 2022 through March 2022 admitted into the case, along with employment records and banking records (all of which had no direct proof of being linked to drug activity). The district court abused its discretion in denying the defense's *motions in limine* and choosing to allow jurors to hear this unfairly prejudicial propensity evidence. The admitted evidence sought to be excluded by the defense's *motions in limine* were confusing and misleading to the jury.

### C. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S HEARSAY OBJECTION REGARDING KEYS TO A STORAGE UNIT?

Over the hearsay objection by the defense, the trial court allowed a witness to provide unfairly prejudicial hearsay testimony to members of the jury. With regards to a hearsay objection, the appellate court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Barton*, 909 F.3d 1323 (11th Cir. 2018); *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013); *United States v. House*, 684 F.3d 1173, 1197 (11th Cir. 2012); *United States v. Brown*, 415 F.3d 1257, 1265 (11th Cir. 2005). In the instant case the district court allowed Sgt. Powell to provide hearsay testimony to the jury that was being offered for the truth of the matter contained within the testimony—that being the out-of-court statements of a third party saying that the keys that Sgt. Powell used to open storage unit C403 were said to have been retrieved from Mr. Adams or retrieved from a search of the 303 22nd Street East residence and/or Mr. Adams. Without question this testimony was hearsay—for which there was no exception. The court abused its discretion in allowing this testimony and line of questioning of Sgt. Powell to proceed over the defense objection.

D. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL...?

At the close of the government's case, the trial court denied defendant's motion for judgment of acquittal. A lower court's denial of a motion for judgment of acquittal is reviewed for abuse of discretion. A district court abuses its

discretion when it misapplies the law in reaching its decision or bases its decision on findings of fact that are clearly erroneous. *United States v. Scrushy*, 721 F.3d 1288 (11th Cir. 2013). When the evidence is sufficient to sustain a defendant's conviction is a question of law which the appellate court reviews *de novo*. *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013)709 F.3d 1323 (11th Cir. 2018); *United States v. To*, 144 F.3d 737 (11th Cir. 1998). In the instant case the evidence against Mr. Adams was insufficient to sustain a finding of guilt. The 303 22nd Street East residence was not the primary residence of Mr. Adams. The was no evidence of Mr. Adams engaging in any actual drug transaction. The was no evidence that the money transactions surrounding the CashApp account were conducted by Mr. Adams, or that the account belonged to Mr. Adams. Any evidence from the residence or the storage unit was proven to belong to Mr. Adams.

E. WHETHER THE DISTRIC COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S REQUEST FOR A JURY INSTRUCTION ON "MERE PRESENCE"…..?

Prior to the district judge handing the case over to the jury the court heard argument on the defendant's written request for a jury instruction on mere presence.[63] As set forth in the written submission, it was the position of the

[63] *See generally*, Doc. 128.

defense that prior to the execution of the search warrants, the Government's evidence at trial failed to provide to testimony of any actual hand-to-hand transaction or distribution of drugs on the part of Mr. Adams or any designee. Likewise, the same applies with respect to a firearm and ammunition. Government witnesses stated, in so many words, that prior to the execution of the search warrants it was the belief that Mr. Adams might be selling drugs. The defense sought to add "mere presence"[64] language to the end of the district court's proposed pattern instruction on "possession."[65] A lower court's denial of a requested jury instruction is reviewed for abuse of discretion. *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013); *United States v. Sirang*, 70 F.3d 588 (11th Cir. 1995). However, the *de novo* standard applies if the issue is whether there was sufficient evidence to support the instruction. *United States v. Dixon*, 901 F.3d 1322, 1346-47 (11th Cir. 2018). In the instant case, particularly where the Government's against Mr. Adams lacked any actual hand-to-hand transactions or any witness coming forth to say that Mr. Adams had provided them drugs, a mere presence instruction should have been given when that is clearly what is supportable by the evidence presented. A requested instruction which is

---

[64] The proposed language to be added at the end of pattern special instruct 6 was: "Mere presence" at the scene of an event or merely associating with certain people does not establish proof of possession." *See* Doc. 128 at 2.

[65] *Id.*, at 1.

substantively correct must be given, though it need not be given in the requested language. The obligation to give a proper instruction is not defeated by the language used by the requesting party. *United States v. Morris*, 20 F.3d 1111 (11th Cir. 1994).

F. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT TO A TERM OF 228 MONTHS IMPRISONMENT….?

Trial courts are not permitted to presume that a Guideline sentence is reasonable. *United States v. Agbai*, 497 F.3d 1226 (11th Cir. 2007). In light of the circumstantial evidence in the instant case, the district court—in accepting and imposing an advisory guideline sentence—abused its discretion. The government had no actual evidence of Mr. Adams providing drugs to anyone. The "total" sentence proposed by the defense would have satisfied the purposes of sentencing outlined in 18 U.S.C. § 3553(a)—not the court imposed high-end advisory guideline sentence.

## V. CONCLUSION

Appellant's conviction and sentence should be reversed in light of the foregoing.

Respectfully submitted,

**IRVIN LAW FIRM**

*/s/Grady C. Irvin, Jr.*

________________________________
Grady C. Irvin, Jr.
Florida Bar No. 006548
P.O. Box 21246
Tampa, Florida 33622
Telephone: 813.659.2000
grady@irvinattorneys.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 22nd day of July, 2025, a true and correct copy of the *Initial Brief of Appellant (corrected)* was provided via CM/ECF to:

**Holly L. Gershow, AUSA** (Appellate Counsel)

**Andre Adams, 39478-510**
FCI Oakdale I
1507 East Whatley Rd.
Oakdale, LA 71463

**IRVIN LAW FIRM**

*/s/Grady C. Irvin, Jr.*

________________________________
Grady C. Irvin, Jr.
Florida Bar No. 006548
P.O. Box 21246
Tampa, Florida 33622
Telephone: 813.659.2000
grady@irvinattorneys.com

**Attorneys for Appellant**